UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SUSAN HAMILTON                                               CIVIL ACTION

VERSUS                                                       NO. 20-226-SDD-SDJ

BELLE OF BATON ROUGE
CASINO AND HOTEL, et al.

## ORDER

Before the Court is Plaintiff's Motion to Compel (R. Doc. 9), which seeks an order compelling Defendants to provide certain information requested in discovery. Defendants have filed an Opposition to the Motion (R. Doc. 24). Having considered the parties' filings, as well as the applicable law, the Court will **partially GRANT** Plaintiff's Motion to Compel (R. Doc. 9) but otherwise **DENIES** the majority of Plaintiff's requested relief.

In this personal injury action, Plaintiff alleges that she slipped and fell in a puddle of caustic chemicals while walking through the atrium of the Belle of Baton Rouge Casino and Hotel on November 6, 2018. (R. Doc. 1-4). Plaintiff filed suit against the Belle of Baton Rouge, as well as Eldorado Resorts, Inc. and New Tropicana Holdings, Inc.—the two entities whom Plaintiff believed to be the owners and operators of the Belle of Baton Rouge.

During discovery, Plaintiff propounded what she describes as "basic" Interrogatories and Requests for Production to Defendants, but claims she has "been unable to obtain satisfactory discovery responses related to simple questions." (R. Doc. 9-1 at 1). Unsatisfied with Defendants' responses, Plaintiff filed the instant Motion to Compel on October 15, 2020. (R. Doc. 9).

**I.    APPLICABLE LAW**

Rule 26(b)(1) generally allows a party to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1) (proportionality takes into account "the importance of the issues . . . the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense . . . outweighs its likely benefit."). The court must limit the frequency or extent of discovery that is "unreasonably cumulative or duplicative," the requesting party "has had ample opportunity to obtain," or is "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

**II.    DISCUSSION**

In her Motion to Compel, Plaintiff asks the Court to order production of the following information: (1) "who owns and operates the Belle"; (2) "what happened to the surveillance video"; (3) "other, prior slip and fall incidents at the Belle during the past five years"; and (4) "third-party fault as Defendants have pled this as an affirmative defense." (R. Doc. 9-1 at 1-2). The Court considers each issue below.

    **A.    Owner and Operator of the Belle**

In their Answer to the Complaint, Eldorado and New Tropicana allege they are not proper party Defendants, as neither directly owned nor operated the Belle on November 6, 2018. (R. Doc. 1-4 at 7). And so, Plaintiff's Interrogatory Nos. 2 and 3, and Request for Production Nos. 8 and 9, sought the identity of the owner and operator of the Belle at the time of Plaintiff's alleged injuries. (R. Doc. 9-1 at 2-9). In response, Defendants clearly indicated that Catfish Queen Partnership in Commendam owns and operates the Belle and did so on November 6, 2018. (R. Doc. 9-1 at 2-3). Although Defendants seemingly provided the information requested, Plaintiff nonetheless moved

to compel, as she believes the Catfish Queen may be a "legal fiction" because its most recent filings with the Secretary of State do not list any general partners.

A partnership in commendam must have at least one general partner in addition to limited partners. *See* La. Civ. C. art. 2837 ("A partnership in commendam [(or limited partnership)] consists of one or more general partners . . . and one or more partners in commendam, or limited partners"). And, according to Plaintiff, a limited partnership will cease to exist under Louisiana law without any general partners. *See* La. Civ. C. art. 2826 (partnership in commendam "terminates by the retirement from the partnership, or the death, interdiction, or dissolution, of the sole or any general partner unless" certain conditions are met).

Although Plaintiff simplifies the law relevant to the termination of partnerships in commendam, she correctly points out that the Catfish Queen's filings with the Secretary of State have not identified a "General Partner" since June 23, 2017, and instead list only 3 limited partners. (R. Doc. 9-1 at 3). Therefore, Plaintiff believes that the Catfish Queen has not existed as a legal entity since June 23, 2017—before her November 6, 2018 accident. Plaintiff then goes through a long and protracted discussion of the Catfish Queen's business filings and lists some 8 potential entities that may be partners of the Catfish Queen and potentially "have valid legal interests as owner, operator, lessee, etc., in the Belle." (R. Doc. 9-1 at 8).

To determine the proper party Defendant(s), Plaintiff therefore asks the Court to compel Defendants to: (1) "identify all entities having an interest in the Belle," (2) "identify the 'General Partner' of Catfish Queen," and (3) "indicate which of the [8 potential entities identified by Plaintiff] have valid legal interests as owner, operator, lessee, etc., in the Belle." (R. Doc. 9-1 at 8).

To begin, Defendants identified the owner and operator of the Belle—Catfish Queen—in their Interrogatory responses, as Plaintiff requested. Moreover, in their Opposition, Defendants make clear that they have already advised Plaintiff that:

> The [Belle] is operated by Catfish Queen Partnership in Commendam. The General Partner is New Tropicana Opco, Inc. The limited partners are New Tropicana Holdings, Inc. and New Jazz Enterprises, LLC. If Defendants are correct [that Catfish Queen's business filings are sufficient], the only proper parties to this lawsuit would be Catfish Queen Partnership in Commendam and New Tropicana Opco, Inc. (as the General Partner). . . . Therefore, regardless of who is correct on whether filings were done properly, the only entities that could be proper parties to this case are, Catfish Queen Partnership in Commendam, New Tropicana Opco, Inc., New Tropicana Holdings, Inc., and New Jazz Enterprises, LLC.

(R. Doc. 24 at 4). Defendants have likewise informed Plaintiff that they would agree to an amended complaint naming Catfish Queen, along with its General and Limited Partners, as Defendants. (R. Doc. 24 at 4-5). Because Defendants have not only provided this information in discovery, but also made these representations on the record and to the Court, the Court finds Plaintiff is in possession of the information she has specifically asked this Court to compel. (R. Doc. 9-1 at 8) (listing 3 items to compel).

And so, Plaintiff's Motion to Compel is **DENIED** to the extent she seeks additional responses to **Interrogatory Nos. 2 and 3** and **Request for Production Nos. 8 and 9**.

Moreover, the Court will permit Plaintiff to file an **amended Complaint** naming any real parties in interest as **defendants**. Plaintiff's amended complaint must be filed **within 14 days** of this Order. **Defendants** are likewise **ORDERED** to provide Plaintiff with the **information** necessary to determine the **citizenship** of Catfish Queen Partnership in Commendam, New Tropicana Opco, Inc., New Tropicana Holdings, Inc., and New Jazz Enterprises, LLC, within **7 days** of this Order.

### B.    Surveillance Video

Within 30 days of the accident, Plaintiff claims her attorney requested all video footage taken at the Belle between November 5 and November 6, 2018, both by phone and by letter on December 3, 2018. (R. Doc. 9-1 at 9). Director of Surveillance, Mike Brown, apparently "advised" counsel "that he had excised video footage surrounding the time period of the incident and allowed [Plaintiff's] counsel to view that video footage." (R. Doc. 9-1 at 10). However, the video did not include footage of the atrium before the accident. (R. Doc. 9-1 at 10).

After suit was filed and discovery began, Plaintiff's counsel again requested "digital copies of any and all video films, photos, images and/or surveillance taken at the [Belle] from November 5, 2018 through November 6, 2018." (Pl.'s Request for Produc. No. 2, R. Doc. 9-1 at 11). And while Plaintiff also includes Interrogatory No. 9 in her Motion, which sought descriptions of cameras located throughout the atrium, Plaintiff makes no argument regarding this request in her Motion to Compel. (R. Doc. 9-1 at 10).

In response, Defendants explained that they have produced all available video footage of the accident, as well as all available footage showing Plaintiff at the Belle on November 6, 2018—before, during, and after the accident. In other words, the same footage previously viewed by Plaintiff's counsel. However, Plaintiff remains unsatisfied, claiming the footage has been selectively "edited" to exclude the lobby "prior to the incident." (R. Doc. 9-1 at 10). She therefore "wishes to have an explanation as to what happened to the video tape and when, and if destroyed, Plaintiff wishes to have a presumption and inference of fault available when casinos destroy video surveillance tape." (R. Doc. 9-1 at 11).

First, the Court declines Plaintiff's somewhat confusing "wish[]" that a presumption of fault be "available" in this and similar situations involving casinos. The general *availability* of a presumption accomplishes nothing. Beyond that, Defendants have explained that video surveillance is automatically overwritten within 7 to 14 days. Although the actual footage of the accident, and Plaintiff walking throughout the Belle on November 6, 2018, was preserved following the incident, any other footage was automatically overwritten within 7 to 14 days. (R. Doc. 24 at 10).

An adverse inference or presumption requires, among other things, a showing of "bad faith." *Consolidated Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 343 (M.D. La. 2006). But as this Court has previously noted, bad faith is generally "not present where the destruction is a matter of routine . . . ." *Consolidated Aluminum Corp.*, 244 F.R.D. at 343. On the other hand, a total lack of explanation by the destroying party may be enough. *See Stirgus v. Dillard Dep't Store, Inc.*, 2018 WL 4634971, at *2 (E.D. La. Sept. 27, 2018) ("The absence of an explanation regarding the very two pieces involved in the core incident of this action seem to indicate bad faith, or at minimum, bad conduct.").

Putting aside the fact that Plaintiff has made no effort to show bad faith, that showing would be difficult where Defendants say they tried "to retain all relevant video footage"—i.e., "video showing Plaintiff" throughout the Belle on November 6, 2018. (R. Doc. 24 at 10). Defendants also explain that any remaining footage was automatically overwritten within 7 to 14 days, as a matter of routine. And, "at the time any request was [first] made by Plaintiff to preserve the video, no other video existed other than what has already been produced." (R. Doc. 24 at 10). Plaintiff offers nothing to refute Defendants' explanation. Under these circumstances, the Court cannot find bad faith warranting an adverse inference.

And finally, "[w]hile the Court understands Plaintiff's frustration, it cannot compel Defendants to produce video surveillance that does not exist." *Savoy v. Strougher*, 2020 WL 4006665, at *3 (M.D. La. July 15, 2020); *see also Butler v. La. Dep't of Pub. Safety & Corr.*, 2014 WL 3867552, at *1 (M.D. La. Aug. 6, 2014) (cannot compel what does not exist); *Payne v. Forest River, Inc.*, 2015 WL 1912851, at *4 (M.D. La. Apr. 22, 2015) ("The court cannot order the production of documents that no longer exist or, despite a diligent search, cannot be found in the possession, custody, or control of a party."); *Callais v. United Rentals N. Am., Inc.*, 2018 WL 6517446, at *7 (M.D. La. Dec. 11, 2018) ("Should there be any video recordings, they could be relevant and discoverable, but the Court cannot order the production of something the producing party suggests does not exist."); *Terral v. Ducote*, 2016 WL 5017328, at *2 (W.D. La. Sept. 19, 2016) ("The court cannot order respondents to produce [surveillance footage] that does not exist."). Therefore, Plaintiff's Motion to Compel is **DENIED** as to Request for Production No. 2 and Interrogatory No. 9.

### C.    Prior Slip and Fall Incidents

Plaintiff's Interrogatory No. 8 asked Defendants to "list all slip and fall accidents which have occurred in the lobby and/or on the floor of the [Belle] during the 5-year period preceding [this] incident . . . ." (R. Doc. 9-1 at 11). In response, Defendants objected to the request as overbroad, but otherwise indicated they were "unaware of any other incidents similar to what Plaintiff has alleged." (R. Doc. 9-1 at 12). Plaintiff complains that Defendants limited their response to "similar" incidents, which is not what she requested. She then lists 10 lawsuits allegedly involving "slip and fall incidents at the Belle" during the last 5 years, and asks that the Court order Defendants to produce the "accident and investigative reports" for each incident. (R. Doc. 9-1 at 13).

To begin, the Court must deny Plaintiff's Motion to the extent she seeks production of these reports, as she has never requested this information in discovery. *See SJB Grp., LLC v. TBE Grp., Inc.*, 2013 WL 2928214, at *3 (M.D. La. June 13, 2013) ("It is axiomatic that a court may not compel the production of documents under Rule 37 unless the party seeking such an order has served a proper discovery request on the opposing party."). Instead, she propounded a single interrogatory asking Defendants for a "list" of slip and fall accidents. But even if Plaintiff had formally requested production of these reports in discovery, her Motion would still be denied as over broad.

Generally, evidence of prior accidents may show "that a thing or place was dangerous and that the defendant knew of the dangerous condition." *Bullock v. The Rapides Found.*, 941 So. 2d 170, 175 (La. App. 3 Cir. 2006). But "the prior accidents must be closely related in circumstance to the injury or hazard at issue." *Davis v. Louisiana Power & Light Co.*, 612 So.2d 235, 239 (La. App. 4 Cir. 1992). "[T]o be relevant, the other accidents should occur at substantially the same place and under substantially the same conditions and must be caused by the same or similar defect, danger, act or omission." *Lee v. K-Mart Corp.*, 483 So.2d 609, 613 (La. App. 1 Cir. 1985). And so, Plaintiff's request for a list of all slip and falls occurring within 5 years of her accident is overbroad, as written.

Defendants responded to Interrogatory No. 8 by confirming that no other similar accidents have occurred—i.e., accidents involving caustic chemicals being left unattended in the atrium by Belle employees. (R. Doc. 24 at 12). Moreover, Defendants have described the accidents underlying the 10 lawsuits identified by Plaintiff and none of them involve similar circumstances. The Court finds Defendants have sufficiently responded and therefore **DENIES** Plaintiff's Motion to Compel as to Interrogatory No. 8.

### D. Third-Party Fault

In their Answer, Defendants alternatively pled that either Plaintiff or some non-party was at fault for the injuries alleged. (R. Doc. 1-4 at 10); *see also* Fed. R. Civ. P. 8(d)(2) (party may plead claims or defenses in the alternative). And so, Plaintiff's Interrogatory No. 15 asked: "If you contend that a third-party was at fault . . . describe in detail the nature of that fault and the witnesses and/or documents on whom or which you rely for your answer." (R. Doc. 9-1 at 13). Defendants responded to Interrogatory No. 15 by describing Plaintiff's alleged fault for the accident. (R. Doc. 9-1 at 14). Plaintiff now contends that Defendants "did not respond properly to this Interrogatory," (R. Doc. 9-1 at 14), and the Court agrees.

Although their Opposition more directly responds to the information sought in Interrogatory No. 15, Defendants actual Answer to Interrogatory No. 15 does not. *Compare* (Defs.' Opp'n, R. Doc. 24 at 15) ("Currently, Defendants do not have any specific evidence of third-party fault, but may develop this information as discovery continues."), *with* (Defs.' Answer to Interrog. No. 15, R. Doc. 9-1 at 14) ("Defendants assert the area was sufficiently marked . . . and blocked off to . . . prevent persons from entering . . . . Plaintiff ignored and walked past multiple warnings . . . .").

Considering discovery need only be "relevant" to any "party's claim or defense," Fed. R. Civ. P. 26(b)(1), Plaintiff is certainly entitled to seek information directly related to an alternatively pled defense. *See Deutsche Bank Nat'l v. Pink*, 2019 WL 399533, at *6 (N.D. Tex. Jan. 31, 2019) ("text of Rule 26(b)(1) does not require Defendant to seek discovery related *only* to its pleaded

defenses"). And so, Plaintiff's Motion to Compel is **GRANTED** as to Interrogatory No. 15 and **Defendants** must **supplement** their Answer to Interrogatory No. 15 within **14 days** of this Order.

Signed in Baton Rouge, Louisiana, on December 10, 2020.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**